674 So.2d 738 (1995)
Robert Hilton BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 93-03916.
District Court of Appeal of Florida, Second District.
September 20, 1995.
*739 James Marion Moorman, Public Defender, and Diane Buerger, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph Hwan-Yul Lee, Assistant Attorney General, Tampa, for Appellee.
FULMER, Judge.
Robert Brown appeals the trial court's denial of his motions to dismiss numerous charges on statute of limitations grounds. Because we reject the state's claim that the statutes of limitation were tolled while Brown was incarcerated out of state on unrelated charges, we reverse.
In 1983, the state filed four informations against Brown charging him with various counts of theft and forgery alleged to have occurred between November 3, 1982, and January 21, 1983. In April 1983, a capias was issued in each of the cases which included a notation that Brown was out of state in a federal prison. It is undisputed that the state made the decision not to extradite Brown and not to place any detainers on him.
Brown was released from federal prison in November 1991 and came to Florida in August 1992. Shortly thereafter he was stopped for a traffic check, and it was discovered that there were active warrants for his arrest in Florida. He was arrested and placed in a county jail. The next day he was arrested by federal marshals for violating his parole. Brown then spent the next two and a half months in Florida jails before being taken back to federal prison in Georgia. When Brown was again released from federal prison in August 1993, he turned himself in to Florida authorities. On October 12, 1993, Brown filed motions to dismiss the four cases, claiming that prosecution was barred because the applicable statutes of limitation had expired. After the motions were denied, Brown entered a plea of no contest, reserving the right to appeal the denial of the motions.
The statutes of limitation that apply to the various charges filed against Brown all provide that prosecution must be "commenced" within a specified number of years.[1] A prosecution is commenced when *740 "either an indictment or information is filed, provided the capias, summons, or other process issued on such indictment or information is executed without unreasonable delay." § 775.15(5), Fla.Stat. (1993). Thus, the filing of an information and the issuance of a capias do not, alone, commence prosecution. The capias must also be executed without unreasonable delay. State v. Miller, 581 So.2d 641 (Fla. 2d DCA), review dismissed, 584 So.2d 999 (Fla.1991). The word "executed" means completion of service on the defendant. State v. Fields, 505 So.2d 1336 (Fla.1987). Section 775.15(5) further provides that "[i]n determining what is reasonable, inability to locate the defendant after diligent search or the defendant's absence from the state shall be considered."
In this case, each information was filed and each capias was issued well within the limitation periods. Therefore, the question presented is whether the capiases were "executed without unreasonable delay." The burden is on the state to demonstrate that the delay was not unreasonable. State v. King, 282 So.2d 162 (Fla.1973). Florida courts have defined "unreasonable delay" through a case-by-case examination of whether the state was diligent in its efforts to execute a capias in order to bring a defendant before the court within the statutory limit. Pre-arrest delays have been found to be unreasonable where the state made little or no attempt to find the defendant or, knowing his location, made no attempt to serve a capias on him. See Fields, 505 So.2d 1336 (dismissal of charges affirmed when capias was served more than three and a half years after the information was filed because the state knew where the defendant had been residing for the preceding five years but made no attempt to execute capias); Bragenzer v. State, 582 So.2d 142 (Fla. 5th DCA 1991) (the trial court's ruling that one unsuccessful attempt to execute a capias was a reasonable and diligent search because the defendant could not be located due to his own "transient nature" was reversed because a single attempt to serve a defendant does not constitute a diligent search); Walker v. State, 543 So.2d 353 (Fla. 5th DCA 1989) (single attempt at service at residence of defendant's mother does not constitute diligent search); Colvin v. State, 541 So.2d 724 (Fla. 2d DCA 1989) (defendant entitled to discharge because state delayed serving capias for more than six years even though the state was aware of his whereabouts).
Perhaps more apposite is Miller, 581 So.2d 641, in which the state argued that the delay in executing a capias was not unreasonable because the defendant was out of the state for a period of time. At the time the defendant left the state, there were no charges pending against him. After being notified that charges had been filed against him, he waived extradition and agreed to return to Florida. However, Florida refused to go to Indiana and pick him up and, therefore, he was released by Indiana officials. This court found that neither the defendant's absence from the state nor his conduct prevented the state from commencing the prosecution within the required time period and concluded that when "the absence from the state is not the fault of the defendant and does not result in preventing prosecution, the time periods of statutes of limitations are not tolled." 581 So.2d at 642.
As in Fields, Colvin and Miller, the state knew where Brown was but deliberately made no attempt to execute the outstanding capiases within the limitation periods. And, as in Miller, neither the defendant's absence from the state nor his conduct prevented the state from commencing prosecution.
The state contends that these cases do not apply here because none involve a defendant such as Brown who was out of state in another sovereign's custody on an unrelated charge. Under these circumstances, the state suggests that the applicable statute of limitations should be tolled and that the focus of the "executed without unreasonable delay" inquiry should be limited to the time within which a capias is executed after a defendant is released from custody. At the hearing on the motions to dismiss, the state argued:

*741 I think the issues in this case boil down to, does the state have an affirmative obligation to extradite somebody from another state or from federal custody simply because they know where he's at. And I'm not aware of any case law or rule that would provide that.
We oftentimes in many cases make the determination that we are not going to extradite somebody. If they come back and get arrested on the warrant, if they come back to Florida and happen to get arrested, then the case is going to be picked back up. That's exactly what happened in this case. The state does not have an affirmative duty to go and extradite somebody from either the federal system or from some other state.
Thus, the real question raised by the state's position in this case is whether a statute of limitations continues to run while a defendant is in the custody of another sovereign when the state knows the location of the defendant. We hold that it does.
Time limitations upon criminal prosecutions are solely creatures of statute. The statutory period of limitation begins to run on the day after the offense is committed and runs until the prosecution is commenced, unless some intervening act occurs to interrupt it. William J. Appel, Annotation, Issuance or Service of State-Court Arrest Warrant, Summons, Citation, or Other Process as Tolling Criminal Statute of Limitations, 71 ALR 4th 554 (1989). Statutes of limitation are to be liberally construed in favor of the accused. Reino v. State, 352 So.2d 853, 860 (Fla.1977). Generally, the running of a statute of limitations is tolled only for reasons specified in the statute. 1 Wharton's Criminal Law § 184. Section 775.15 contains no provision that tolls the period of limitation when a defendant is in the custody of another sovereign,[2] and we find no language in the statute that will authorize a court-made exception. Furthermore, we cannot agree that there should be an exception or a tolling of the limitation period in those cases where a defendant is incarcerated out of state. Such an exception would contravene the purpose of a statute of limitations and deprive the defendant of a substantive right.
In Reino, 352 So.2d 853, 860, our supreme court quoted from Toussie v. United States, 397 U.S. 112, 114-115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970), to set forth the purpose of a statute of limitations:
The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before "the principle that criminal limitations statutes are `to be liberally interpreted in favor of repose.'"
Our supreme court has also recognized that protection from prosecution after the statute of limitations has run is a substantive right. State ex rel. Manucy v. Wadsworth, 293 So.2d 345 (Fla.1974). The state has no authority to deprive the defendant of the benefit of the statute or to alter the period of limitation.
We recognize that our decision places a burden on the state to monitor the limitations period and to extradite a defendant when necessary to avoid having a prosecution barred by a statute of limitations. We do not find this to be an inappropriate burden. *742 Nor do we find it to be an unreasonable burden given the ability of the state to obtain a defendant from the custody of either another state or the federal authorities pursuant to the Interstate Agreement on Detainers Act.[3]See § 941.45, Fla.Stat. (1993); 18 U.S.C.App. 2, § 1 et seq.[4]
Therefore, we hold that a defendant's out-of-state incarceration on an unrelated offense does not toll the statute of limitations, nor does it suspend the statutory requirement that the capias, summons or other process issued on an indictment or information be executed without unreasonable delay.
Accordingly, we reverse and remand with instructions to discharge the defendant.
FRANK, A.C.J., and BLUE, J., concur.
NOTES
[1] The statutes of limitation that apply are those that were in effect at the time of the incidents giving rise to the criminal charges. See State v. Mack, 637 So.2d 18 (Fla. 4th DCA 1994). Brown was charged with multiple counts of grand theft and petit theft, in violation of section 812.014, Florida Statutes (1981), and uttering a forgery, in violation of section 831.02, Florida Statutes (1981). He was also charged with one count of forgery, in violation of section 831.01, Florida Statutes (1981). The applicable periods of limitation range from one to five years. See §§ 775.15(2)(b) and (d), and 812.035, Fla.Stat. (1981).
[2] Section 775.15(6) allows the period of limitation to be tolled for a period not to exceed three years when a defendant is continuously absent from the state or has no reasonably ascertainable place of abode or work within the state. This subsection merely allows for the filing of the information or indictment to be delayed. It is not an absolute limitation upon prosecution after a specified period. Once the information or indictment has been filed within the limitation period, the capias, summons or other process may be issued beyond the limitation period as long as the delay in their execution is found to be reasonable. See State v. Picklesimer, 606 So.2d 473 (Fla. 4th DCA 1992), review denied, 618 So.2d 210 (Fla.1993).
[3] We reject the state's reliance on the fact that Brown did not properly invoke his rights under the Agreement to be returned to Florida and tried on the outstanding charges. Because the state made the affirmative decision not to place a detainer on Brown, the Act was not applicable. Further, it is the state's responsibility to comply with the statutes of limitation, not the defendant's.
[4] Article I of the Agreement provides that its policy and purpose is "to encourage the expeditious and orderly disposition of [untried informations]."